﻿Citation Nr: AXXXXXXXX
Decision Date: 05/29/20 Archive Date: 05/29/20

DOCKET NO. 190925-32744
DATE: May 29, 2020

ORDER

A rating in excess of 10 percent for residuals of shrapnel wound to the left foot (hereinafter left foot disability) is denied.

REMANDED

Entitlement to a rating in excess of 30 percent for microvascular angina (hereinafter heart disability) is remanded.

Entitlement to a rating in excess of 30 percent for residuals of a right shoulder arthroplasty (hereinafter right shoulder disability) is remanded.

Entitlement to a total disability rating based on individual unemployability (TDIU) due to service-connected disability is remanded.

FINDING OF FACT

The Veteran’s left foot disability was not more nearly manifested by symptoms indicating a moderately severe or greater level of disability.

CONCLUSION OF LAW

The criteria for a rating in excess of 10 percent for left foot disability are not met. 38 U.S.C. §§ 1155, 5107; 38 C.F.R. §§ 4.1, 4.3, 4.56, 4.7, 4.71a, 4.73, Diagnostic Code 5284-5310.

REASONS AND BASES FOR FINDING AND CONCLUSION

The Veteran served on active duty from April 1970 to December 1971.

This appeal comes before the Board of Veterans’ Appeals (Board) on appeal from an April 2019 rating decision of a Department of Veterans Affairs (VA) Regional Office (RO). In September 2019, the Board received the Veteran’s VA Form 10182 (Decision Review Request: Board Appeal (Notice of Disagreement)) requesting Direct Review by a Veterans Law Judge. A September 2019 Board letter notified the Veteran that his appeal had been placed on the Direct Review docket.

Entitlement to a rating in excess of 10 percent for left foot disability from December 20, 2018, to April 26, 2019.

An August 2017 rating decision granted service connection for residuals of shrapnel wound to the left foot with retained foreign bodies and scar, assigning a 10 percent rating effective from April 28, 2017, under Diagnostic Code 5284-5310. VA received a claim for increase in December 2018. See VA Form 21-526EZ (December 2018). 

The Veteran, and his representative, contends that a higher rating is warranted for his left foot disability. Specifically, the Veteran argues that he is entitled to a higher rating because of pain associated with the shrapnel inside his foot. See Correspondence (December 2018).

The Board concludes that the preponderance of the evidence is against finding that the Veteran’s left foot disability is more nearly manifested by symptoms indicating a moderately severe or greater level of disability. Hence, a higher rating is not warranted.

Disability evaluations are determined by the application of the VA Schedule for Rating Disabilities (Rating Schedule). 38 C.F.R. Part 4. The percentage ratings contained in the Rating Schedule represent, as far as can be practicably determined, the average impairment in earning capacity resulting from diseases and injuries incurred or aggravated during military service and their residual conditions in civil occupations. 38 U.S.C. § 1155; 38 C.F.R. § 4.1. Any reasonable doubt regarding the degree of disability will be resolved in favor of the claimant. 38 C.F.R. § 4.3. If two evaluations are potentially applicable, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that evaluation; otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. A disability may require re-evaluation in accordance with changes in a veteran’s condition. It is thus essential, in determining the level of current impairment, that the disability be considered in the context of the entire recorded history. 38 C.F.R. § 4.1.

The Veteran’s left foot disability is rated under Diagnostic Code 5284-5310. Hyphenated codes are used when a rating under one Diagnostic Code requires use of an additional Diagnostic Code to identify the basis for the evaluation assigned; the additional code is shown after the hyphen. 38 C.F.R. § 4.27.

Under Diagnostic Code 5284 (other foot injuries), a 10 percent rating is warranted for moderate other foot injuries. A 20 percent rating is warranted for moderately severe other foot injuries. A 30 percent rating is warranted for other foot injuries. A Note to Diagnostic Code 5284 instructs that with actual loss of use of the foot rate as a maximum 40 percent. 38 C.F.R. § 4.71a, Diagnostic Code 5284. According to MERRIAM WEBSTER, “moderate” means “tending toward the mean or average amount or dimension”. See www.merriam-webster.com/dictionary/moderate. “Severe” means “of a great degree”. See www.merriam-webster.com/dictionary/severe. 

Diagnostic Code 5310 governs ratings of muscle injuries of the foot, specifically, Muscle Group X. 38 C.F.R. § 4.73, Diagnostic Code 5310. Under Diagnostic Code 5310, a slight injury is noncompensable; a moderate injury is 10 percent disabling, a moderately severe injury is 20 percent disabling, and a severe injury is 30 percent disabling. Per the Note associated with Diagnostic Code 5310, the minimum rating for through-and-through wounds of the foot is 10 percent. See 38 C.F.R. § 4.73, Diagnostic Code 5310.

A moderate muscle disability results from a through-and-through or deep penetrating wound of short track from a single bullet, small shell or shrapnel fragment, without explosive effect of high velocity missile, residuals of debridement, or prolonged infection. In the case of a moderate disability, the veteran manifests consistent complaints of one or more of the cardinal signs and symptoms of a muscle disability, particularly a lowered fatigue threshold. Some loss of deep fascia or muscle substance or impairment to muscle tonus and loss of power or lowered threshold of fatigue is expected. 38 C.F.R. § 4.56(d)(2).

A moderately severe muscle disability results from a through-and-through or deep penetrating wound with debridement, prolonged infection, or sloughing of soft parts, and intermuscular scarring. Records should indicate hospitalization for a prolonged period for treatment of the wound and consistent complaints of cardinal signs and symptoms of muscle disability with evidence of an inability to keep up with work requirements. A moderately severe disability also requires indications on palpation of loss of deep fascia, muscle substance, or normal firm resistance of muscles compared with the sound side; and tests of strength and endurance compared with the sound side demonstrating positive evidence of impairment. 38 C.F.R. § 4.56(d)(3). 

A severe muscle disability results from through-and-through or deep penetrating wound with extensive debridement, prolonged infection, sloughing of soft parts, and intermuscular scarring and binding. It requires ragged, depressed and adherent scars; loss of deep fascia or muscle substance or soft flabby muscles in the wound area; and severe impairment on tests of strength, endurance, or coordinated movements compared with the corresponding muscles of the uninjured side. 38 C.F.R. § 4.56(d)(4).

The cardinal signs and symptoms of muscle disability are loss of power, weakness, lowered threshold of fatigue, fatigue-pain, impairment of coordination, and uncertainty of movement. 38 C.F.R. § 4.56(c).

An increased rating under the criteria for rating muscle injury to the left foot, would require evidence of moderately severe or worse symptoms. In this regard, that type of injury is defined as requiring debridement, including prolonged infection, sloughing of soft parts and intermuscular scarring. Here, the Veteran’s service treatment records (STRs) do not reflect the type of injury associated with a moderately severe muscle injury. The evidence, overall, reveals that in January 1971 the Veteran sustained mine fragment wounds to the upper and lower extremities. He subsequently underwent three separate operations, in January 1971, February 1971, and March 1971, to have the fragments removed. There is no evidence of prolonged infection, sloughing of soft parts, or intermuscular scarring. Indeed, at service separation, the examining physician clinically evaluated the Veteran’s lower extremities as normal and noted the scars in the legs due to shrapnel. In the corresponding report of history, the Veteran denied any foot trouble and described his overall health as good. 

As to the history, moderately severe disability of the muscles is defined as evidence showing hospitalization for a prolonged period for treatment of wound with consistent complaint of cardinal signs and symptoms of muscle disability. Here, the record shows that the Veteran started to experience pain of the left foot decades after service separation. See C&P Exam (May 2017) (reflecting that the Veteran reported an onset of left foot pain “a few years ago”). 

As to evidence of objective findings of moderately severe muscle injury, there is no evidence of loss of deep fascia, muscle substance, or normal firm resistance of muscles compared with sound side although there was tenderness left plantar fascia with nodules felt beneath surface. See C&P Exam (February 2019). Notably, his February 2019 VA examination reflects primarily complaints of pain with walking that feels like a stone in his foot and findings for lowered threshold of fatigue and fatigue-pain involving muscle Group X, cardinal signs and symptoms of muscle disability but alone not indicative of moderately severe symptoms or disability.

Group X muscles of the foot include the flexor digitorum brevis, abductor hallucis, abductor digiti minimi, quadratus plantae, lumbricales, flexor hallucis brevis, adductor hallucis, flexor digiti minimi brevis, dorsal and plantar interossei, which controls function and movements of forefoot and toes, propulsion thrust in walking. The record shows that the Veteran, a retired postal worker, ambulated without an antalgic gait, but rather a steady gait; his gait was described as normal. See CAPRI at 2, 8 (February 2019). The record shows that the Veteran is able to go for long walks except when his back flares. See CAPRI at 4 (February 2019). The muscle injury impacted the Veteran’s ability to work because his walking is limited due to pain, but there was no effect on sedentary activities of employment. At the most recent VA examination, in February 2019, the examiner found no weakness, loss of power, impairment of coordination, or uncertainty of movement associated with the left foot disability.

In sum, although the Veteran experiences foot pain, there is little functional impairment in his use of the left foot apart from lowered threshold of fatigue and fatigue-pain per recent examination, which limits walking. His symptoms are contemplated by the 10 percent rating assigned for moderate symptoms/disability, whether under Diagnostic Code 5310 or 5284.

Both the lay and medical evidence are probative here. However, whether a disability has worsened sufficiently to meet the schedular criteria for the assignment of a higher evaluation is a factual determination by the Board based on the Veteran’s complaints coupled with the medical evidence. Although the Veteran believes he meets the criteria for a higher disability rating, his complaints and the medical findings do not meet the schedular requirements for a higher evaluation, as explained and discussed above. It is noted that there is no contention of limited motion of the left foot, but rather pain and fatigue associated with the shell wound injury—the functional effect being limited walking. Hence, as the rating is not based on limitation of motion, 38 C.F.R. § 4.40 and 38 C.F.R. § 4.45 are for application. See DeLuca v. Brown, 8 Vet. App. 202 (1995); see also Mitchell v. Shinseki, 25 Vet. App. 32, 44 (2011). Further, although under 38 C.F.R. § 4.59, painful motion is a factor to be considered, the current disability rating contemplates the associated pain and fatigue symptoms. See Burton v. Shinseki, 25 Vet. App. 1 (2011). Absent competent, credible evidence showing impaired function or movements of the Veteran’s forefoot and toes, involving propulsion thrust in walking, or other signs of severe muscle disability as mentioned above, the Board finds that the evidence does not more nearly reflect the functional equivalent of moderately severe or worse symptoms of disability.

As explained above, the criteria for a higher disability rating are not more nearly approximated. 38 C.F.R. § 4.56, 4.73, Diagnostic Code 5284-5310.

The Board has considered whether a higher disability evaluation is available under any other potentially applicable provision of the Rating Schedule. However, a higher evaluation is not warranted based on any other provision of the Rating Schedule. For instance, a higher rating is not warranted under Diagnostic Codes 5278 or 5283, as the medical evidence does not demonstrate that the service-connected disability is manifested by claw foot (pes cavus) or by malunion or nonunion of the tarsal or metatarsal bones. See 38 C.F.R. § 4.71a, Diagnostic Codes 5278, 5283. In addition, the weight of the evidence does not show that symptoms of the Veteran’s service-connected left foot disability are analogous to severe unilateral acquired flatfoot, with objective evidence of marked deformity, pain on manipulation and use accentuated, an indication of swelling on use, and characteristic callosities. See 38 C.F.R. §§ 4.20; 4.71a, Diagnostic Code 5276. Also, a separate rating for scar is not warranted as there are no complaints or findings that support a separate schedular rating. See 38 C.F.R. § 4.118.

Accordingly, the claim is denied. There is no doubt to resolve. § 38 U.S.C. § 51074(b).

REASONS FOR REMAND

1. Entitlement to a rating in excess of 30 percent for heart disability from is remanded. 

The Veteran, and his representative, contends that a higher rating is warranted. Specifically, the Veteran argues that he is entitled to a higher rating because symptomatology associated with his heart disability has increased, to include having constant chest pain. See Correspondence (December 2018). The Veteran additionally maintains that a higher rating is warranted because of a December 2018 hospitalization, in which, he experienced fatigue, angina, dizziness, and shortness of breath.

The Board finds that remand is necessary to correct a duty to assist error that occurred prior to the April 2019 rating decision on appeal. 

The Veteran was afforded a VA examination in February 2019. In section 14 of the examination report, relating to metabolic equivalent (MET) testing, the examiner provided results for an interview based METs test. The results were based on findings during the examination. The examiner additionally provided results for a December 2018 exercise stress test. The examiner, however, provided no response as to why an exercise stress testing was not conducted during examination. Note 2 of 38 C.F.R. § 4.104 provides, “When the level of METs . . . is required for evaluation, and a laboratory determination of METs by exercise testing cannot be done for medical reasons, an estimation by a medical examiner of the level of activity . . . may be used.” Stated another way, a medical examiner may estimate METs based on an interview only when, for medical reasons, the claimant cannot perform an exercise stress test. In this case, the examiner provided an estimated METs level based on an interview but did not explain why an exercise stress test could not be performed. As such, it is unclear from the examination report whether the interview-based estimate of the Veteran’s METs level is an appropriate measure of the Veteran’s exertional capacity in view of Note 2 of 38 C.F.R. § 4.104. 

In view of the foregoing, the Board finds that the February 2019 VA examination does not provide adequate information necessary to rate the Veteran’s service-connected heart disability under the relevant criteria found in 38 C.F.R. § 4.104, Diagnostic Code 7005. Barr v. Nicholson, 21 Vet. App. 303 (2007).

As such, the Board finds that remand is necessary to correct a duty to assist error that occurred prior to the April 2019 rating decision on appeal. 

2. Entitlement to a rating in excess of 30 percent for right shoulder disability is remanded.

The Veteran, and his representative, contends that he is entitled to a disability rating in excess of 30 percent for his right shoulder disability. Specifically, the Veteran argues that a higher rating is warranted because he has problems lifting his right arm, has pain, and has difficulty sleeping at night. 

The Board finds that remand is necessary to correct a duty to assist error that occurred prior to the April 2019 rating decision on appeal. 

The record reflects that the Veteran underwent a shoulder joint VA examination in February 2019. The Board has reviewed the examination report and finds that it is inadequate for adjudication purposes.

The February 2019 VA examination report for the right shoulder is inadequate because it does not reveal that any passive, weight-bearing or non-weight-bearing range of motion testing was conducted at that time. Correia v. McDonald, 28 Vet. App. 158 (2016) (38 C.F.R. § 4.59 requires that VA examinations include joint testing for pain on both active and passive motion, in weight-bearing and non-weight-bearing). Indeed, the report simply states that pain was noted on examination and that it caused functional loss. It is noted that for a VA examination of the joints to be adequate it, “must, wherever possible, include the results of the range of motion testing described in the final sentence of [38 C.F.R. § 4.59].” Id. at 169-70.

It is noted that if intermediate degrees of residual weakness, pain or limitation of motion exist, the right shoulder disability can be rated by analogy to Diagnostic Codes 5200 and 5203. See 38 C.F.R. § 4.71a, Diagnostic Code 5051. In this case, there is evidence of right shoulder pain or limitation of motion.

Consequently, remand is warranted for another VA examination that fully satisfies the requirements of Correia. See Barr, 21 Vet. App. 303. 

The Board, therefore, finds that remand is necessary to correct a duty to assist error that occurred prior to the April 2019 rating decision on appeal. 

3. Entitlement to a TDIU due to service-connected disability is remanded.

The Veteran, and his representative, seeks a TDIU due to service-connected disabilities, to include heart disability and right shoulder disability. See Appellate Brief (April 2020).

As discussed above, the issues of (1) entitlement to a rating in excess of 30 percent for heart disability, and (2) entitlement to a rating in excess of 30 percent for right shoulder disability are being remanded to correct duty to assist errors that occurred prior to the April 2019 rating decision. The Board, therefore, finds that the pre-decisional duty-to-assist errors extend to the issue of entitlement to a TDIU due to service-connected disability. 

The matters are REMANDED for the following actions:

1. Schedule the Veteran for a VA examination (which, if deemed appropriate, may be via telehealth interview, review of the record, etc., if an in-person examination is not feasible) by an appropriate clinician to determine the current severity of his service-connected heart disability. The examiner should provide a full description of the disability and report all signs and symptoms necessary for evaluating the Veteran’s disability under the rating criteria.

For TDIU purposes: 

The examiner should elicit from the Veteran his complete educational, vocational, and employment history.

(a) The examiner should ask the Veteran to describe in his own words the functional impact of his heart disability on his ability to perform the physical and mental acts required for substantially gainful work. The Veteran’s response should be recorded in the respective examination report.

(b) Indicate the objective functional effects of the Veteran’s heart disability on his ability to perform the physical acts (e.g., walking, sitting, standing, bending) and mental acts (e.g., concentration, focus, attention, and memory) required for employment.

2. Schedule the Veteran for a VA examination (which, if deemed appropriate, may be via telehealth interview, review of the record, etc., if an in-person examination is not feasible) by an appropriate clinician to determine the current severity of his service-connected right shoulder disability. The examiner should provide a full description of the disability and report all signs and symptoms necessary for evaluating the Veteran’s disability under the rating criteria.

(a) Test the Veteran’s active motion, passive motion, and pain with weight-bearing and without weight-bearing. If it is not possible to provide a specific measurement without speculation, the examiner must state whether the need to speculate is due to a deficiency in the state of general medical knowledge (no one could respond given medical science and the known facts), a deficiency in the record (additional facts are required), or the examiner (does not have the knowledge or training).

(b) Attempt to elicit information regarding the severity, frequency, and duration of any flare-ups, and the degree of functional loss during flare-ups. If it is not possible to provide a specific measurement based on direct observation, the examiner should provide an estimate, if at all possible, of the additional impairment due to flare-ups based on the other evidence of record and the Veteran’s statements. If it is not possible to provide a specific measurement without speculation, the examiner must state whether the need to speculate is due to a deficiency in the state of general medical knowledge (no one could respond given medical science and the known facts), a deficiency in the record (additional facts are required), or the examiner (does not have the knowledge or training).

(c) For TDIU purposes: 

The examiner should elicit from the Veteran his complete educational, vocational, and employment history.

i. The examiner should ask the Veteran to describe in his own words the functional impact of his right shoulder disability on his ability to perform the physical and mental acts required for substantially gainful work. The Veteran’s response should be recorded in the respective examination report.

ii. Indicate the objective functional effects of the Veteran’s right shoulder disability on his ability to perform the physical acts (e.g., walking, sitting, standing, bending) and mental acts (e.g., concentration, focus, attention, and memory) required for employment.

 

 

C.A. SKOW

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board A. Griffey, Associate Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.